SLIP OPINION     Cite as 2015 Ark. App. 141

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–14–803

|  |  |  |
| --- | --- | --- |
| ANTHONY LEWIS | | **Opinion Delivered** March 4, 2015 |
| | APPELLANT | |
| V. | | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G104513] |
| CALFRAC WELL SERVICES CORP. | | |
| | APPELLEE | AFFIRMED |

## M. MICHAEL KINARD, Judge

Anthony Lewis appeals from an order of the Arkansas Workers' Compensation Commission allowing the appellee-employer a credit or setoff, against its obligation to pay compensation benefits, in an amount equal to that which had previously been paid to appellant under a separate group-disability policy paid for by appellee. He contends that the Commission erred in its interpretation of Arkansas Code Annotated section 11-9-411 (Repl. 2012), the statute governing such setoffs. We affirm.

Appellant suffered a compensable injury to his back on April 22, 2011, while employed by appellee. The claim was accepted by appellee, and appellant was paid temporary-total disability benefits, representing the time from May 17, 2011, through the end of his healing period, August 3, 2012. Thereafter, consistent with the ten-percent anatomical disability rating assigned by his surgeon, appellant was paid permanent-partial disability benefits for the forty-five weeks between the end of his healing period and June

24, 2013.[1]  Appellee controverted appellant's claim to entitlement to wage-loss disability benefits in excess of the impairment rating.

On November 13, 2013, appellant first informed appellee that he had received disability benefits from Sun Life Financial under a group-disability policy paid for by appellee. Those benefits were separate from the workers' compensation benefits and were paid between May 24, 2011, and August 22, 2013.  The Sun Life payments totaled over $14,000.  In light of the revelation about appellant's receipt of the Sun Life benefits, appellee sought a credit or setoff pursuant to Arkansas Code Annotated section 11-9-411 against any remaining liability that it might have to appellant for workers' compensation benefits.  That statute provides in pertinent part as follows:

> (a)(1) *Any benefits payable to* an injured worker under this chapter shall be reduced in an amount equal to, dollar-for-dollar, the amount of benefits the injured worker has previously received *for the same* medical services or *period of disability*, whether those benefits were paid under a group health care service plan of whatever form or nature, a group disability policy, a group loss of income policy, a group accident, health, or accident and health policy, a self-insured employee health or welfare benefit plan, or a group hospital or medical service contract.
>
> (2) The reduction specified in subdivision (a)(1) of this section does not apply to any benefit received from a group policy for disability if the injured worker has paid for the policy.
>
> (b) The claimant shall be required to disclose in a manner to be determined by the Workers' Compensation Commission the identity, address, or phone number of any person or entity which has paid benefits described in this section in connection with any claim under this chapter.

---

[1]That is, appellant was paid at his full or total compensation rate for ten percent of the 450 weeks of permanent-partial disability for which an employer is liable under Ark. Code Ann. § 11-9-522(a) (Repl. 2012).

(Emphasis added.)

At a hearing before an administrative law judge (ALJ) on January 30, 2014, the parties litigated appellant's entitlement to wage-loss disability benefits and appellee's entitlement to a setoff in an amount equal to the payments that appellant had received under the Sun Life disability policy. The ALJ determined that appellant qualified for a twenty-percent wage-loss award above the anatomical impairment rating; according to appellant, those wage-loss benefits would be paid at appellant's total compensation rate for an additional ninety weeks,[2] representing the time between June 25, 2013, and mid-March 2015. The ALJ also held that appellee was not entitled to a setoff against its obligation to pay wage-loss benefits. The ALJ reasoned that the amount that appellee was obligated to pay in wage-loss benefits related to a different "period of disability" from that for which the Sun Life benefits had been paid and that section 11-9-411(a) did not allow for a setoff under those circumstances.

Appellee appealed the setoff portion of the ALJ's order, and the Commission reversed. The Commission pointed out that, under both the plain language of the statute itself and the judicial opinions that have addressed it, the overriding purpose of section 11-9-411 is clearly to prevent a double recovery by a claimant for the same period of disability. The Commission also noted that appellant had failed to disclose that he had received the Sun Life benefits until mid-November 2013, which was after those benefits had ceased. The Commission stated that it was undisputed that appellant had received disability benefits under a Sun Life policy, provided by appellee, during the same period of time and for the same

---

[2]See note 1, *supra.*

3

 

disability that he received workers' compensation disability payments from appellee. According to the interpretation of the statute by appellant and the ALJ, the Commission continued, "there is no plausible scenario by which a credit could ever be taken, especially in situations such as this one, where the respondent is unaware that group disability benefits are being paid concurrently with workers' compensation benefits." Holding that the ALJ's ruling had the effect of allowing a double recovery by appellant, the Commission reversed that decision and allowed appellee to offset against its remaining obligation for workers' compensation disability benefits an amount equal to that which appellant had received from Sun Life.

On appeal, appellant argues that section 11-9-411(a) does not allow for a credit or setoff under the circumstances of this case. As noted previously, that section provides, "Any [workers' compensation] benefits payable to an injured worker . . . shall be reduced in an amount equal to . . . the amount of benefits the injured worker has previously received [from any of a variety of collateral sources] for the *same . . . period of disability*." (Emphasis added.) Appellant seems to argue that the Sun Life benefits had been paid to him during the particular "period[s]" that he was receiving temporary-total disability benefits and permanent-partial disability benefits for his anatomical impairment, but that the amounts that remain payable by appellee cover a different period. In other words, appellant assumes that "period of disability" as used in the statute is defined by the *type* of disability *benefit* that one is then receiving; his argument is based upon the premise that he has undergone three distinct periods of disability in this case—temporary disability, permanent impairment, and wage-loss.

He argues that, because the Sun Life benefits were received while he was receiving temporary-total and permanent impairment benefits, appellee cannot obtain the statutory credit by reducing the wage-loss benefits because the latter relate to a different "period of disability."

The question of the correct interpretation and application of a statute is a question of law, which we decide de novo. *St. Edward Mercy Medical Center v. Howard*, 2012 Ark. App. 673, 424 S.W.3d 881. Arkansas Code Annotated section 11-9-704(c)(3) (Repl. 2012) requires that we construe workers' compensation statutes strictly. Strict construction requires that nothing be taken as intended that is not clearly expressed. *Davis v. Action Mechanical*, 2012 Ark. App. 515. The basic rule of statutory construction is to give effect to the intent of the legislature. *Id*. When a statute is clear, however, it is given its plain meaning, and the appellate court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Id*. In that circumstance, we construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id*.

A statute is ambiguous where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id*. In interpreting an ambiguous statute and attempting to construe legislative intent, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, legislative history, and other appropriate matters that throw light on the matter. *Second Injury Fund v. Osborn*, 2011 Ark.

232; *Arkansas Electric Co-op Corp. v. Death & Permanent Total Disability Trust Fund*, 2012 Ark. App. 13. Additionally, we recognize that the Workers' Compensation Commission, as an administrative agency, is better equipped by specialization, insight through experience, and more flexible procedures than are courts to determine and analyze legal issues affecting its agency. *Arkansas Electric Co-op Corp.*, *supra*. In deciding what a statute means, the interpretation of a statute by the agency charged with its execution is highly persuasive and, while not binding on this court, will not be overturned unless it is clearly wrong. *Brigman v. City of West Memphis*, 2013 Ark. App. 66; *Arkansas Electric Co-op Corp.*, *supra*.

"Disability" under our workers' compensation act means "incapacity because of compensable injury to earn, in the same or any other employment, the wages which the employee was receiving at the time of the compensable injury." Ark. Code Ann. § 11-9-102(8) (Repl. 2012). Here, appellant suffered a work-related injury on April 22, 2011, and became disabled as a result no later than May 17, 2011. He has been "disabled," and has been held entitled to and has received workers' compensation disability benefits, since that time. It is clear from this record that appellant has suffered only one period of disability; there has been no cessation of it.[3] Beginning after the onset of, and encompassed completely within, the period of his workers' compensation disability, appellant received additional

---

[3]Clearly, one can suffer two disabilities on account of two separate injuries. Moreover, one can recover from a disability and return to work, suffer a recurrence of the original injury, and become disabled once again. *E.g.*, *McDonald Equipment Co. v. Turner*, 26 Ark. App. 264, 766 S.W.2d 936 (1989). Under either of those circumstances, perhaps it could be said that the injured worker has suffered multiple periods of disability. However, those are not the facts here.

SLIP OPINION

benefits for his disability under the Sun Life policy for a portion of the same period, *i.e.*, May 17, 2011, through August 22, 2013. Therefore, we conclude that the workers' compensation disability benefits payable to appellant under the order appealed from are plainly "benefits payable to" appellant for the "same . . . period of disability" for which he previously received benefits under the group policy issued by Sun Life. Since the Sun Life policy was provided by appellee, the Commission correctly determined that appellee was entitled to a setoff in an amount equal to those Sun Life benefits.

Even if we were to find the phrase "period of disability" ambiguous, which we do not, we would still reach the same result. Section 11-9-411 first appeared as part of Act 796 of 1993, a primary purpose of which was to return the Arkansas workers' compensation system to a state of economic viability. Ark. Code Ann. § 11-9-101(b) (Repl. 2012). We have held that the overriding purpose of section 11-9-411 is to prevent a double recovery by a claimant for the same period of disability. *Brigman*, *supra*; *Henson v. General Electric*, 99 Ark. App. 129, 257 S.W.3d 908 (2007). Appellant cites no authority and makes no convincing argument in support of the strained definition that he would assign to the term. He simply equates period of disability with the *type* or *category* of disability *payment* that one is entitled to receive at any particular point in time. We disagree. As the Commission noted, reading the phrase in question as appellant would have us do would not effectuate the purpose of the statute but would run counter to it and actually allow an undeserved double recovery in this case and many others.

Appellant also argues that appellee should not be allowed a setoff in the amount of the Sun Life benefits because Sun Life has supposedly claimed a right to a potential refund of a portion of what *it* paid appellant. He claims that Sun Life, pursuant to the policy issued by that company, has threatened to seek to recoup what it had paid appellant, up to an amount equal to what appellant might receive in Social Security disability benefits. However, the record does not contain the Sun Life policy or any decision from the Social Security Administration on any claim by appellant. While appellant maintained that he had applied for Social Security disability and had received a favorable decision, even appellant admitted that he had not yet received any award. Without more, neither the Commission nor this court would be in a position to know whether appellant will receive Social Security benefits or, if so, in what amount, much less whether Sun Life would attempt to recover what it had paid or if it would be legally entitled to do so. Based on the record before us, we find no merit in appellant's argument.

Affirmed.

GLADWIN, C.J., and BROWN, J., agree.

*Gary Davis*, for appellant.

*Mayton, Newkirk & Jones*, by: *Mike Stiles*, for appellees.