

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-15-668

| | | |
|---|---|---|
| CARL WILHELM | | Opinion Delivered: **JANUARY 27, 2016** |
| | **APPELLANT** | |
| V. | | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G401492] |
| CHUCK PARSONS, RAY PARSONS, AND CHUCK'S METAL BUILDINGS, INC. | | |
| | **APPELLEES** | **AFFIRMED** |

## KENNETH S. HIXSON, Judge

Appellant Carl Wilhelm appeals the decision of the Arkansas Workers' Compensation Commission that found him to be an employee of appellee Chuck's Metal Buildings, Inc. (hereinafter "CMB") and found that CMB procured workers' compensation insurance coverage, such that an exception to the exclusive-remedy doctrine did not apply. This finding rendered Wilhelm's exclusive remedy to be under the Workers' Compensation Act and precluded a tort action against CMB. Wilhelm argues on appeal that the Commission's decision is reversible because (1) even if Wilhelm was an employee, CMB failed to procure workers' compensation insurance coverage in compliance with Arkansas law, and (2) the Commission failed to adhere to rules of fair play in administering the hearing. We affirm.

CMB is a company that fabricates and constructs metal buildings. Appellant, who had worked for CMB since 1999, was seriously injured at work on a CMB construction

site on July 16, 2009. Appellant was standing on a platform and welding when he fell, sustaining major injuries. Appellant did not file a workers' compensation claim[1] but did file a negligence action in Franklin County Circuit Court against CMB and others in 2012. CMB asserted the exclusive-remedy doctrine in its answer as an affirmative defense. Appellant asserted that he was an independent contractor and that the exclusive-remedy doctrine did not apply. The circuit court transferred the matter to the Commission, as the Commission had the exclusive jurisdiction to determine appellant's status under the law and whether the exclusive remedy doctrine applied.

A hearing before an Administrative Law Judge followed, whose findings were affirmed and adopted by the Commission. Various evidentiary objections were raised and ruled upon during the hearing. The ALJ ultimately found that appellant was an employee of CMB. The ALJ rejected Wilhelm's contention that he was an independent contractor of construction and welding services. The ALJ further rejected Wilhelm's contention that CMB failed to secure workers' compensation insurance, such that an exception to the exclusivity doctrine might be triggered.

The evidence at the hearing upon which the ALJ made these findings was as follows. Linda Parsons, the wife of CMB's owner, testified that she was the bookkeeper and did payroll and paid other bills for the company. She stated that appellant worked with her husband and son, that he was sometimes reimbursed for travel expenses, and that he was paid based upon hours turned in to her each week, not by the job. Linda said that the

---

[1] The parties agreed that the two-year statute of limitations for filing a workers' compensation claim had expired.

SLIP OPINION

company sent appellant a 1099 each year and did not withhold any amounts from appellant's weekly checks. Payroll and bookkeeping records were submitted into evidence. Linda considered appellant an employee of CMB. She testified that CMB had procured workers' compensation insurance coverage at the time of appellant's injuries, although she said that the application did not specifically list any employees. Linda said that CMB paid a $1,000 premium for this insurance coverage, which was purchased in case one of the people working for them was hurt. Linda said that, right after the work accident, she mentioned the workers' compensation insurance coverage to appellant's wife several times, offering to call CMB's insurance agent, but that his wife refused, stating that she had her own health insurance through Blue Cross and Blue Shield.

Two coworkers of appellant's—Dennis Coburn and Jason Walker[2]—testified that they heard Linda tell appellant's wife that CMB had workers' compensation insurance. Coburn and Walker also discussed the type of labor they provided to CMB, as well as the working conditions.

Chuck Parsons, owner of CMB, testified that CMB erects metal buildings and had been in business for about ten years. Chuck said that appellant worked for him as a laborer, doing welding, lifting, hammering, and whatever needed to be done, some at the CMB shop and some at specific construction sites. Chuck acknowledged that appellant had his own hood, gloves, and welder, but said that he used both CMB's and his own tools. He said that appellant used the company's welder more than his own and that appellant was

---

[2] Walker's testimony, a prehearing deposition, was submitted as joint exhibit by the parties.

using company tools—a welder, rods, and platform—on the day of the injury. Appellant had been to this worksite a few days beforehand and was present with another worker at the direction of CMB on the day he was injured. According to Chuck, appellant was not required to bring his own tools to a job site.

Chuck explained that appellant would report to the CMB shop to get his work assignments each day. Although appellant was able to work independently, he was not doing specialized work and he (Chuck) had the authority to tell appellant what to do as part of the construction crew. Chuck testified that he occasionally hired subcontractors to do specific jobs, paying them per job and not by the hour like appellant. Chuck confirmed hearing appellant's wife decline using CMB's workers' compensation coverage. Chuck said that he was proud that he had his first workers' compensation insurance policy.

Ray Parsons, Chuck's son, testified that he acted as supervisor for CMB when his father was not there. Ray considered appellant an employee of CMB, along with the other construction workers on the crew. Ray said that appellant had his own equipment but that appellant infrequently used it on job sites. He stated that appellant used CMB trailers to haul materials. Ray testified that appellant had supervisory authority when he and his father were not on site, but that he (Ray) had the authority to tell appellant how to do his work if needed.

Jane Derden testified that she was an insurance auditor who performed an audit of CMB's workers' compensation insurance coverage provided by Technology Insurance Company. Jane stated that CMB had such coverage in effect from April 2009 to April 2010. Her review of the file notes did not reveal that appellant was ever listed on the policy as an

SLIP OPINION

employee. Her understanding was that if a person was left off the insurance policy, the insurance carrier could come back later to ask for additional premiums. The eighteen-page "Workers' Compensation and Employers Liability Insurance Policy" was made part of the record.

Appellant's wife, Barbara Wilhelm, testified that her husband was a contract laborer for CMB, going to CMB and doing the jobs they assigned to him. She denied ever being told that CMB had workers' compensation insurance, and when her husband was admitted to the hospital, they (the hospital) asked for her insurance card. Barbara had told her own health insurance company that her husband's accident was non-work related; Blue Cross and Blue Shield paid substantial sums for his care. She agreed that they had never attempted to file a workers' compensation claim.

Appellant testified that he believed himself, and intended, to be a subcontractor for CMB, having his own tools and driving his own truck to work. He did not recall being reimbursed for travel expenses. Appellant claimed to work without supervision, but if Chuck or Ray told him to do something, he would do it. Appellant agreed that he had worked almost exclusively for CMB as a general laborer, not bidding on specific jobs but rather being paid by the hour; that he went to the CMB shop every morning to get his job assignment; that Chuck and Ray supervised his work and had the authority to tell him where, when, and how to work on the job; that he never hired his own employees for jobs and had no authority to do so on a CMB job site; that he informed CMB if he was going to take a day off; and that he used CMB tools more often than his own.

Various objections to evidence and testimony were posited to the ALJ and ruled on at the time. The ALJ reviewed the evidence and testimony presented, concluding that after consideration of the proper factors and legal authorities, appellant was clearly an employee of CMB for workers' compensation purposes. The ALJ explained that the relationship described by all the witnesses constituted an employee/employer relationship, regardless of the titles used by each witness. The ALJ found the following to be compelling facts: (1) both Chuck and Ray had supervisory authority over appellant, which was exercised at times; (2) appellant was part of a work crew of general laborers, reporting each morning to CMB for work assignments and using primarily CMB work tools; (3) appellant never engaged in a separate and distinct occupation or business apart from CMB, and he worked almost exclusively for CMB in the years leading up to this work injury; (4) appellant was a skilled welder but was not engaged in specialized welding on the CMB construction crew; (5) CMB's business was in construction of buildings; and (6) appellant was paid by the hour and not by the job.

As to whether CMB would be subject to a tort lawsuit because of a failure to secure payment of compensation, the ALJ determined that CMB had secured the payment of compensation by acquiring a workers' compensation insurance policy that was undisputedly in effect at the time of the work injury. The ALJ rejected appellant's contention that the employer was required to prove that he (appellant) was personally insured as an employee under the policy and that the employer was required to prove that there was no fraud in attaining the coverage. The ALJ further rejected appellant's wife's contention that she was never told about the workers' compensation policy or the possibility of filing this as a

workers' compensation claim. The acquisition of a workers' compensation policy was deemed satisfactory under the statutory requirement recited in Arkansas Code Annotated section 11-9-404.

On appeal to the Commission, appellant contended that the ALJ failed to properly apply the factors in deciding whether he was an employee or independent contractor; failed to properly apply the statutory exception regarding procurement of workers' compensation insurance coverage; and improperly curtailed his ability to present or cross examine witnesses. The Commission affirmed and adopted the ALJ's decision, making no ruling on whether the administrative hearing was conducted in an unfair manner. This appeal followed.

The standard of review in workers' compensation cases is well settled. On appeal, this court views the evidence and all reasonable inferences therefrom in the light most favorable to the Commission's decision and affirms that decision when it is supported by substantial evidence. *Honeysuckle v. Curtis H. Stout, Inc.*, 2010 Ark. 328, at 5, 368 S.W.3d 64, 68. It is for the Commission to determine where the preponderance of the evidence lies. *Id.* Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* There may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we had sat as the trier of fact or heard the case de novo. *Id.* It is exclusively within the province of the Commission to determine the credibility and the weight to be accorded to each witness's testimony. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the

conclusions arrived at by the Commission. *Id.* While not conclusive, the interpretation of a statute by an administrative agency charged with its execution is highly persuasive and will not be reversed unless clearly wrong. *Lewis v. Calfrac Well Servs. Corp.*, 2015 Ark. App. 141, 457 S.W.3d 313; *Death & Permanent Total Disability Trust Fund v. Brewer*, 76 Ark. App. 348, 65 S.W.3d 463 (2002).

The Workers' Compensation Act, including the exclusive-remedy provision, is made possible by amendment 26 to the Arkansas Constitution, which amended art. 5, § 32. That amendment provides that the Arkansas General Assembly has the power to enact legislation prescribing the amount of compensation employers are required to pay for injuries or deaths of employees. Essential in this case is the General Assembly's enactment of Arkansas Code Annotated section 11-9-105, which states in relevant part that:

(a) The rights and remedies granted to an employee subject to the provisions of this chapter, on account of injury or death, shall be exclusive of all other rights and remedies of the employee. . . .

(b) (1) However, if an employer fails to secure the payment of compensation as required by this chapter, an injured employee . . . may, at his option, elect to claim compensation under this chapter or to maintain a legal action in court for damages on account of the injury or death.

Because the exclusive-benefits provision of our compensation law favors both the employer and the employee, we take a narrow view of any attempt to seek damages beyond that favored, exclusive remedy. *Brown v. Finney,* 326 Ark. 691, 932 S.W.2d 769 (1996). The question of whether an employer-employee relationship exists between the parties is a factual issue solely within the jurisdiction of the Commission. *See Coonrod v. Seay,* 367 Ark. 437, 241 S.W.3d 252 (2006); *D & M Const. Co. v. Archer,* 14 Ark. App. 198, 686 S.W.2d 799 (1985). There may be substantial evidence to support the Commission's decision even

though we might have reached a different conclusion if we had sat as the trier of fact or heard the case *de novo. Brower Mfg. Co. v. Willis,* 252 Ark. 755, 480 S.W.2d 950 (1972). The ultimate question in these cases is not whether the employer actually exercises control over the doing of the work, but whether he has the right to control, *see Irvan v. Bounds,* 205 Ark. 752, 170 S.W.2d 674 (1943), and the resolution of the issue depends upon the facts of each case. *Sands v. Stombaugh,* 11 Ark. App. 38, 665 S.W.2d 902 (1984). Ordinarily no one feature of the relationship is determinative. *Carter v. Ward Body Works,* 246 Ark. 515, 439 S.W.2d 286 (1969). In *Franklin v. Arkansas Kraft, Inc.,* 5 Ark. App. 264, 269−70, 635 S.W.2d 286, 289 (1982), we listed some of the factors that may be properly considered:

> (1) the right to control the means and the method by which the work is done;
> (2) the right to terminate the employment without liability;
> (3) the method of payment, whether by time, job, piece or other unit of measurement;
> (4) the furnishing, or the obligation to furnish, the necessary tools, equipment and materials;
> (5) whether the person employed is engaged in a distinct occupation or business;
> (6) the skill required in a particular occupation;
> (7) whether the employer is in business;
> (8) whether the work is an integral part of the regular business of the employer; and
> (9) the length of time for which the person is employed.

*See also Webb v. Hot Springs Packing Co.*, 2013 Ark. App. 526; *Wright v. Tyson Foods, Inc.*, 28 Ark. App. 261, 263−64, 773 S.W.2d 110, 110−11 (1989). The more the worker's occupation resembles the business of the employer, the more likely the worker is an employee. *Cloverleaf Express v. Fouts,* 91 Ark. App. 4, 207 S.W.3d 576 (2005).

The ALJ found appellant to be an employee and not an independent contractor. To the extent appellant is challenging this finding of fact on appeal, we have viewed the

evidence and all reasonable inferences in the light most favorable to the Commission's findings, and we affirm this finding as supported by substantial evidence.

Appellant contends among other things that because CMB did not withhold state and federal taxes and other employee-type deductions and issued the appellant a 1099 instead of a W-2, appellant should be considered an independent contractor for workers' compensation purposes. CMB may not have reported appellant's employment status properly with the state and federal taxing authorities; however, those reports are not dispositive of whether appellant is an employee or independent contractor for workers' compensation purposes. Our case law is clear that the determination of employment status should be based on the factors set forth in *Franklin v. Arkansas Kraft* and not on factors or criteria from other agencies or taxing authorities. While there are factors that could support either status, the evidence brought out at the administrative hearing, and credited by the ALJ and a majority of Commissioners, supports the conclusion that appellant was an employee for purposes of workers' compensation law.

Moving to the primary focus of this appeal, appellant argues that there lacks substantial evidence that CMB had secured workers' compensation insurance coverage, such that the exclusivity doctrine would not apply. Appellant does not contest the existence of a workers' compensation insurance policy at the time of this work accident but rather contests whether he was actually covered by that policy. We disagree that this was what was required under the relevant statute, and we affirm.

To explain, the relevant statute is Arkansas Code Annotated section 11-9-105(b)(1), which provides that "if an employer *fails to secure the payment of compensation* as required

by this chapter" (emphasis added), the employee may file a tort action or file a claim for compensation. Specifically in Arkansas Code Annotated section 11-9-404, the Act defines how an employer meets its obligation to "secure the payment of compensation under this chapter," and one such means is listed in subsection (a)(1) as "[b]y insuring and keeping insured the payment of the compensation with any carrier authorized to write workers' compensation insurance[.]" Arkansas Code Annotated section 11-9-408(c)(1) provides that "No policy or contract of insurance shall be issued against liability under this chapter unless the policy or contract covers the entire liability of the employer." Thus, unless the workers' compensation insurance policy is void ab initio, versus merely voidable, then this coverage is in existence for the protection of an injured employee. *See S. Farm Bureau Cas. Ins. Co. v. Tuggle*, 270 Ark. 106, 603 S.W.2d 452 (Ark. App. 1980). The statutory language is deliberately broad to effect that purpose, creating an insured status for an injured employee of virtually independent existence. *Id.* As stated in *Seawright v. U.S.F.&G. Co.*, 275 Ark. 96, 627 S.W.2d 557 (1982), for reasons of public policy there is an essential unity between the employer and his workers' compensation insurance carrier because otherwise, the employee might have two cases to litigate—one to establish the employer's substantive liability and the other to show that the insurer's policy actually covered that liability. Appellant acknowledges that the ultimate obligation to compensate an injured employee is placed squarely on the employer. Ark. Code Ann. § 11-9-401(b). This does not require that compensation for a workplace injury be *actually paid* in order to effect the exclusive remedy. To hold in such a way adds a requirement not evident in the Act.

Furthermore, the ALJ deemed *Rankin v. Farmers Tractor & Equipment Co.*, 319 Ark. 26, 888 S.W.2d 657 (1994), to be compelling authority to reject appellant's contention that CMB did not "secure the payment of compensation." In *Rankin*, our supreme court interpreted that statute to mean that if there was an employer/employee relationship and the employer provided workers' compensation coverage for its employees, then this satisfied the "secure compensation" wording in the statute. We are to strictly construe the workers' compensation statutes in Arkansas, *Sykes v. Williams*, 373 Ark. 236, 283 S.W.3d 209 (2008), and the wording of the statute has been interpreted and applied to mean that the employer must prove insurance coverage, not necessarily that an individual employee is in fact covered or in fact paid. Here, the question was whether there was a workers' compensation insurance policy in effect, and the answer is clearly yes. Appellant has failed to demonstrate clear error in the manner in which the Commission has interpreted and applied the Workers' Compensation Act.

Appellant's arguments that point to alleged fraudulent behaviors by CMB to avoid paying proper premiums or to avoid payment of claims under the policy are issues between the Commission and the employer under Arkansas Code Annotated section 11-9-106, which provides for penalties for misrepresentations, including those related to obtaining coverage or avoiding payment of the proper insurance premium. There are other penalties available to assess against any employer who fails to properly secure compensation, as provided by Arkansas Code Annotated section 11-9-406. Or, perhaps, there may exist a dispute between the insurance carrier and CMB for CMB's failure to report proper wages, which would result in a retroactive premium adjustment as provided in the policy. In sum,

we affirm the finding that the exception to the exclusivity doctrine does not apply here because, by a plain reading of section 11-9-105(b)(1), CMB secured payment of compensation as required by this chapter by having, undisputedly, a workers' compensation insurance policy in effect.

Appellant adds to this argument by stating that his wife could not waive his claim for him, nor was he required to report this injury because the employer was immediately made aware of the work injury. This goes to the statute of limitations, which appellant conceded had run if it had been filed as a workers' compensation claim. While the employer is duty-bound to report a worker's injury to the Commission within ten days of notice of that injury, failure to report subjects the employer to the potential of a civil penalty. Ark. Code Ann. § 11-9-529. This potential civil penalty does not equate to a tolling of the statute of limitations for purposes of a claimant filing a timely claim for compensation under the Act. *See Chambers v. Int'l Paper Co.*, 56 Ark. App. 90, 938 S.W.2d 861 (1997). Appellant's arguments do not relate to the issue herein, which is whether CMB "secured" the payment of workers' compensation benefits.

To the extent that appellant claims that construing the statute in this manner violates public policy, this argument is not only presented for the first time on appeal but it ignores that the employer would remain liable for compensation had a claim been made.

Appellant, in his second point on appeal, argues that the ALJ conducted this hearing in an unfair manner, preventing the presentation of an expert witness, preventing adequate examination of witnesses, and wrongly permitting the workers' compensation insurance carrier to participate in the hearing. We disagree.

The insurance carrier is permitted as a separate respondent in workers' compensation proceedings. *See* Ark. Code Ann. § 11-9-405. It is entitled to present its case and be represented by counsel, as well as to test the claimant's proof. As to the adverse evidentiary rulings made during this hearing, suffice it to say that the Commission is not bound by technical or statutory rules of evidence or by technical or formal rules of procedure, but rather may conduct the hearing in a manner that will best ascertain the rights of the parties. Ark. Code Ann. § 11-9-705. The Commission must adhere to the rules of fair play, but our reading of the proceedings below reflects a fair and full opportunity to present relevant evidence to best ascertain the rights of the parties.

Appellant makes a blanket statement that the ALJ prevented him from adequately presenting his evidence and testing the opposing parties' evidence with regard to the employer/employee relationship, but we discern no such unfair control over the proceedings. Indeed, appellant expounds in his appellate brief the extensive testimony and evidence presented at the hearing as to the character of appellant's relationship with CMB and whether the factors supported his being an independent contractor. Appellant presented the testimony of eight witnesses and documentary exhibits that included insurance paperwork and the workers' compensation liability policy, payroll records, insurance audit records, and photographs. Most of appellant's complaints go to whether the appellant was a "named employee" under the insurance policy application. However, it was conceded that appellant was not listed. Appellant not being listed an as employee under the policy does not prevent the policy from being effective at the time of the accident. There was extensive discussion and evidence about CMB's application for workers' compensation

coverage and the audit of that policy after its issue. The transcript of the hearing is well over 200 pages long. The ALJ allowed the parties two weeks within which to file any posthearing briefs; the record does not disclose that any such posthearing briefs were filed. Appellant points to no *relevant* evidence that was wrongly excluded or wrongly included. Appellant prevailed in some of his evidentiary requests, and his counsel was able to represent appellant's position in a vigorous and thorough manner.

Because the decision of the Commission is supported by substantial evidence and does not manifest a violation of a fair and full opportunity to present evidence, we affirm.

Affirmed.

HARRISON and VAUGHT, JJ., agree.

*Law Offices of Craig L. Cook*, by: *Keith M. Kannett*, for appellant.

*Davis, Clark, Butt, Carithers & Taylor, PLC*, by: *Constance G. Clark* and *Don A. Taylor*; and *Frye Law Firm, P.A.*, by: *William C. Frye*, for appellees.