

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-17-162

| | |
|---|---|
| | **Opinion Delivered** October 18, 2017 |
| BILLY NEWBY<br><br>APPELLANT<br><br>V.<br><br>CENTURY INDUSTRIES, INC., TRAVELERS INDEMNITY COMPANY OF AMERICA, AND DEATH AND PERMANENT TOTAL DISABILITY TRUST FUND<br>APPELLEES | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G203661]<br><br><br><br><br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

Billy Newby appeals the Arkansas Workers' Compensation Commission's adverse decision. He argues (1) that the Commission's finding that he failed to prove he sustained a compensable lower-back injury is not supported by substantial evidence and (2) that he was entitled to continued medical benefits and treatment for his compensable cervical trapezius injury. We affirm.

### I. *Background*

In March 2016, Newby, who was not represented by a lawyer, testified in a hearing before the administrative law judge that he is a fifty-eight-year-old manual laborer with a high school education. The parties stipulated that an employee-employer-carrier relationship existed on or about 28 March 2012 when Newby suffered a "compensable

injury to his cervical/trapezius area." During the hearing Newby explained that he was working for Century Industries, Inc. as a "catcher" in a process that involved making wooden attic ladders. As he was pulling out a stuck piece of wood, Newby felt a "a pop" and told the law judge that the pop was in his "lumbar area." He said the sensation started to worsen so he eventually went to the doctor and reported the injury to his supervisor within a few days. When asked about his deposition testimony that the "pop" was just under his shoulder blade, Newby replied, "No, I mean—which it was my shoulder. I had like almost three injuries. My lower back first, then it went from my shoulder, then my neck. So I didn't tell [a] lie."

Newby testified that his cervical trapezius is "still a little sore and stuff," that he takes a muscle relaxer and Tylenol for it, and that he wanted additional medical treatment. Newby also testified that he received workers'-compensation benefits while he was off work but they ended sometime in December 2012. He was terminated from his employment with Century in January 2013. According to Newby, his condition prevents him from seeking employment in his previous (and strenuous) line of work because he is still recovering from his cervical-trapezius and lower-back injuries.

Newby's medical records were entered as evidence. Here are some relevant highlights that the Commission found based on the record before it.

On 30 March, two days after the work-related issue, Newby presented to Dr. Lewis with right shoulder pain, among other things. There was no mention of lower-back pain and no indication that the shoulder pain was work related.

SLIP OPINION

In April 2012, Newby returned to Dr. Lewis, who diagnosed him with acromioclavicular joint sprain and placed him on restricted lifting duties. Newby then saw Dr. Covington, who examined him and noted "tender taut spasms" in his right trapezius muscles. Dr. Covington assessed a right trapezius strain and prescribed physical therapy. She also restricted Newby to fifteen pounds of lifting, pulling, or pushing.

In May 2012, Dr. Covington noted muscle spasms in Newby's thoracic area and ordered a trigger-point injection, continued physical therapy, and continued use of a muscle stimulator. Newby did not progress in physical therapy and complained it was exacerbating his pain. A subsequent MRI showed degenerative disc disease at C5-6 and C6-7 but no acute findings. Newby continued with physical therapy and trigger-point injections.

In July 2012, Newby received a change of physician from Dr. Covington to Dr. Lewis. Dr. Lewis noted that Newby complained of neck and back pain and "Pt cervical, thoracic & lumbar spine tender to palpation, w/muscle spasm" in September 2012.

In October 2012, Dr. Seale performed an independent medical evaluation. The exam showed "traumatic decrease range of motion" in Newby's cervical spine and full range of motion "without pain, tenderness, signs of instability or muscle spasms" in the lumbar spine. Dr. Seale found no muscle spasms and stated that the x-rays and MRI showed only degenerative changes. Dr. Seale concluded that Newby was at maximum medical improvement and recommended a functional-capacity exam. He also concluded that Newby's impairment rating should be 0% because there were no objective findings of acute injury, no disc protrusions or fractures—there were only preexisting degenerative changes.

Newby's 27 November 2012 functional-capacity exam showed that his efforts were unreliable and that he had "numerous signs of inconsistent effort including participation in a series of tests to identify the presence of non-organic signs of low back pain." In December 2012, Newby went to UAMS's emergency department with severe muscle spasms in his back and shoulder and reportedly said that he was out of hydrocodone. Records from Century show that temporary total-disability benefits to Newby ended after 18 December 2012.

Dr. Lewis assessed Newby as having lumbago (low-back pain) in January 2013, and a later May 2014 lumbar MRI showed "a mild diffuse disc bulge at L4–5 with central annual tear and minimal inferior migration of a centralized extrusion" and a "broad-based disc protrusion at L5–S1 with central annular tear."

A June 2014 cervical MRI showed degenerative disc disease at C5-6 and C6-7. Dr. Lewis's examination noted that Newby complained of pain in his right shoulder, neck, and his back. Dr. Lewis stated that his neurological examination was normal and that Newby could perform all the functions of the neck and the arms and had full range of motion in the lower back. Dr. Lewis gave Newby a 1% rating mainly due to his chronic pain.

The law judge found that Newby did not prove by a preponderance of the evidence that he suffered a compensable injury to his lower back; nor did he prove that he was entitled to reasonable and necessary treatment of his alleged lower-back injury. As to Newby's compensable cervical-trapezius injury, the law judge found that he had not established that he was entitled to additional medical treatment or additional temporary total-disability benefits. Newby was not entitled to a permanent-impairment rating relating to his alleged

lower-back injury or his compensable cervical–trapezius injury. The Commission adopted the law judge's opinion (2–1) in January 2017. Newby appeals the Commission's decision to this court.

## II. *Discussion*

On appeal, this court views the evidence and all reasonable inferences in the light most favorable to the Commission's decision and affirms that decision when it is supported by substantial evidence. *Wilhelm v. Parsons*, 2016 Ark. App. 56, 481 S.W.3d 767. The Commission determines where the preponderance of the evidence lies. *Id.* Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* There may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we had sat as the trier of fact or heard the case de novo. *Id.* It is exclusively within the province of the Commission to determine the credibility and the weight to be accorded to each witness's testimony. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id.* Additionally, evidence is reviewed impartially, without giving any benefit of the doubt to either party. Ark. Code Ann. § 11-9-704 (Repl. 2012).

## A. Low-Back Injury

Newby first argues that the Commission's finding that he failed to prove that he suffered a compensable injury on 28 March 2012 to his lower back is not supported by substantial evidence. To prove the occurrence of a specific-incident compensable injury, the claimant must establish that (1) an injury occurred arising out of and in the scope of

employment; (2) the injury caused internal or external harm to the body that required medical services or resulted in disability or death; (3) the injury is established by medical evidence supported by objective findings as defined in Ark. Code Ann. § 11-9-102(16); and (4) the injury was caused by a specific incident and is identifiable by time and place of occurrence. Ark. Code Ann. § 11-9-102(4)(A)(i). The claimant must prove these elements by a preponderance of the evidence. Ark. Code Ann. § 11-9-102(4).

In this case, the injury to Newby's lower back allegedly occurred on 28 March 2012. Yet the first appearance of lower-back pain did not appear in Newby's medical records until he saw Dr. Lewis in the latter half of the summer of 2012. Dr. Lewis did not diagnose Newby with lower-back pain—"lumbago"—until January 2013. While Dr. Lewis noted that Newby's symptoms were consistent with the MRI, he also wrote that "these problems are degenerative, which means the symptomology is probably not related to his injury on the job." Newby's initial deposition was that the "pop" occurred in his back, just under his right shoulder blade. When asked to explain a later discrepancy during the administrative hearing, he responded, "No, I mean . . . which it was my shoulder. I had like almost three injuries. My lower back first, then it went from my shoulder, then my neck. So I didn't tell [a] lie." Dr. Seale also noted that Newby had degenerative, preexisting changes in his lower back.

We hold that there was a substantial basis for the Commission to find that Newby failed to establish a compensable lower-back injury. The Commission expressly discredited Newby's "clarification" that he suffered three distinct back injuries, one of which he alleged was to his lower back. Considering all the evidence in the case, the Commission did not

see a causal connection between Newby's lower-back pain (and MRI results) and his work-related injury. Given the lapse of time between the injury and Newby's complaints of lower-back pain—and Dr. Seale's and Dr. Lewis's opinions that the objective findings on the lower-back MRI showed degenerative, preexisting changes—we hold there was a substantial basis for the denial of relief. Given this evidence, our standard of review, and our deference to the Commission's credibility findings, we affirm on this point.

## B. Healing Period

Newby argues that his healing period has not ended because he is still healing and Dr. Lewis gave him a 1% impairment rating for his chronic pain. An injured employee who is totally incapacitated from earning wages and remains within his or her healing period is entitled to temporary total disability. *Riggs v. B & S Contractors, Inc.*, 2010 Ark. App. 554, 377 S.W.3d 466. The healing period continues until the employee is restored as much as the permanent character of the injury will permit. *Id.* It ends when the underlying condition causing the disability becomes stable and no treatment will improve it. *Id.* When the healing period has ended is a fact-based question that the Commission must answer. *Id.*

Here, the Commission found that Newby reached the end of his healing period on 27 November 2012 based on Dr. Seale's conclusion that Newby had reached maximum medical improvement. To the extent Newby had persistent pain in his cervical-trapezius region, the Commission found that the pain, by itself, was not sufficient to extend the healing period.

We affirm the Commission's decision. Dr. Seale agreed that Newby had reached maximum improvement, released him from treatment, and rated him as 0% impairment on

7

the degree of permanent injury. The Commission could credit this medical opinion to conclude that Newby's healing period ended on 27 November 2012. The persistence of pain may not, in and of itself, prevent a finding that the healing period is over if the underlying condition has stabilized. *Mad Butcher, Inc. v. Parker*, 4 Ark. App. 124, 132, 628 S.W.2d 582, 586 (1982). As we discuss in the following section, no doctor recommended surgery or physical therapy or any other course of treatment for Newby's cervical-trapezius injury to stabilize or treat that underlying condition. Substantial evidence supports the Commission's decision that Newby's healing period ended on 27 November 2012.

C. Additional-Medical Treatment for the Cervical-Trapezius Injury

Newby also argues that he proved he needed additional medical treatment for his cervical-trapezius injury, and the Commission erred by denying him additional treatment after his healing period had ended. Century responds that the record contains substantial evidence that Newby failed to prove an entitlement to additional treatment of his compensable cervical-trapezius injury.

"An employer shall promptly provide for an injured employee such medical . . . services . . . as may be reasonably necessary in connection with the injury received by the employee." Ark. Code Ann. § 11-9-508(a) (Repl. 2012). The employee must prove, by a preponderance of the evidence, that medical treatment is reasonable and necessary. *Wal-Mart Stores, Inc. v. Brown*, 82 Ark. App. 600, 120 S.W.3d 153 (2003). What constitutes reasonably necessary treatment is a question of fact for the Commission, which has the duty to use its expertise to determine the soundness of medical evidence and to translate it into findings of fact. *Hamilton v. Gregory Trucking*, 90 Ark. App. 248, 205 S.W.3d 181 (2005).

SLIP OPINION

A claimant may be entitled to ongoing medical treatment after the healing period has ended if the treatment is geared toward management of the compensable injury. *Patchell v. Wal-Mart Stores, Inc.*, 86 Ark. App. 230, 184 S.W.3d 31 (2004). When a claim for additional-medical treatment has been denied because of the claimant's failure to meet his or her burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Goyne v. Crabtree Contracting Co.*, 2009 Ark. App. 200, at 3, 301 S.W.3d 16, 18.

Before his healing period ended, Newby received physical therapy, injections, and prescription medication to treat his compensable injury. When asked at the hearing what additional treatment he was seeking, Newby replied, "Probably therapy maybe. Some more therapy or something." Newby testified that he was taking a muscle relaxer and Tylenol, but he also agreed that the prescription medication and physical therapy "did not really help him."

Here, no doctor recommended that Newby receive surgery for his cervical-trapezius condition as additional treatment. What is more, after the healing period there were no further specific recommendations by medical professionals as to what treatments were medically necessary to help Newby with his cervical-trapezius injury. While Newby was taking prescription muscle relaxers to help with muscle spasms as late as March 2016 when the administrative hearing was conducted, the record contains no doctor recommendation of a certain course of treatment for Newby's compensable cervical-trapezius injury. Given this hole in the proof, the Commission found that Newby did not prove his entitlement to additional medical treatment after his healing period ended because his physicians

recommended none.  We do not reweigh evidence or determine a claimant's credibility. Because no doctor had recommended a certain course of treatment for Newby's chronic pain or muscle spasms, and Newby admitted the prescription medication and physical therapy had not been helpful to him, we hold that substantial evidence supported the Commission's denial of additional medical-treatment benefits.

Affirmed.

GLADWIN and KLAPPENBACH, JJ., agree.

*R. Vincent Morris* and *Kenneth J. Chitwood*, Law Student Admitted to Practice Pursuant to Rule XV of the Rules Governing Admission to the Bar of the Supreme Court under the Supervision of *R. Vincent Morris*, for appellant.

*Spicer Rudstrom, PLLC*, by: *Amy C. Markham*, for appellees.