Cite as 2021 Ark. App. 433

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV-20-218

| | |
|---|---|
| DON RANDALL JACKSON (DECEASED) | **Opinion Delivered** November 10, 2021 |
| APPELLANT | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G701686] |
| V. | |
| SMILEY SAWMILL, LLC; AND TECHNOLOGY INSURANCE CO. | |
| APPELLEES | AFFIRMED |

## BART F. VIRDEN, Judge

Appellant Don Randall Jackson (deceased) appeals from an opinion by the Arkansas Workers' Compensation Commission finding that the doctrine of inconsistent positions did not apply to the facts of this case and that Jackson was an employee when he was killed while working for appellee Smiley Sawmill. Jackson argues that the Commission erred in not applying the doctrine and that the Commission's decision was contrary to the law of the case and violated this court's mandate.[1] Jackson does not raise an alternative argument

---

[1]We note that Jackson's abstract does not comply with our rules in that it is not an impartial condensation of the testimony. Ark. Sup. Ct. R. 4-2(a)(5). In fact, it omits material information and is downright misleading. Fortunately, Smiley Sawmill provided this court with a supplemental abstract that is sufficient for this court to understand the case and decide the issues on appeal without the need for rebriefing.

challenging the Commission's finding that he was an employee. We affirm the Commission's decision.

## I. *Factual and Procedural Background*

In May 2014, "Randy" and Renita Jackson returned to Arkansas after living for nine months in Florida. Jackson contacted his friend Timothy Smiley about working for him as a truck driver because Jackson had a commercial driver's license. Jackson had been working for Timothy for a little over a month when, on July 11, 2014, he was unloading his truck and was struck on the head by a log weighing over 1,000 pounds. There is some indication that the truck had been overloaded.

In August 2016, Jackson's widow brought a negligence action in circuit court against Smiley Sawmill. She alleged that Jackson was an independent contractor, rather than an employee, and therefore not entitled to workers' compensation benefits. Smiley Sawmill had the case transferred to the Commission to determine whether Jackson was an independent contractor or an employee.

An administrative law judge (ALJ) determined that Jackson was an employee, and that opinion was affirmed and adopted by the Commission. On appeal, this court held that a remand was necessary for the Commission to make further findings on whether the doctrine of inconsistent positions applied to prevent Smiley Sawmill from asserting that Jackson was an employee when there was evidence that the employer had treated him as an independent contractor. *Jackson v. Smiley Sawmill*, 2019 Ark. App. 235, 576 S.W.3d 43 (*Jackson I*). This argument was raised from the outset, but neither the ALJ nor the Commission addressed the matter. We gave the following instructions: "[I]f the doctrine

applies and Smiley Sawmill is estopped from taking an inconsistent position, then Jackson was *not* an employee whose exclusive remedy is recovering damages from the employer through workers' compensation, and Jackson's widow may proceed with her lawsuit in circuit court." *Id*. at 6, 576 S.W.3d at 46 (emphasis in original).

On remand, the Commission considered briefs filed by the parties and referred to previous depositions and testimony.[2] Deborah LaValle testified that she began working as a secretary at Smiley Sawmill in 2013. She had previously worked at Fred's. At Smiley Sawmill, she was involved with payroll, submitting applications for workers' compensation insurance, and submitting quarterly wage reports to the Arkansas Department of Workforce Services. LaValle had no experience with payroll or wage reports and was given no job training because her predecessor had no experience either. Because of the lack of training, LaValle looked at two previous wage reports to determine how they were to be completed. She saw that truck drivers were not listed as employees, so she did not include Jackson on the quarterly wage report. LaValle understood that if someone was listed as an employee on the wage report, Smiley Sawmill would have to pay a four-percent tax on that employee. She admitted that it had been a mistake not to list Jackson and other truck drivers as employees on the wage reports. LaValle said that it was a mistake that she made repeatedly but that she had not intended to defraud the state or federal taxing authorities.

Timothy Smiley testified that he dropped out of school and did not receive a high school diploma; instead, he began working in the logging business like his father. Tim said

---

[2]Renita Jackson testified, but her testimony pertained to her husband's status as an employee or independent contractor, and not the applicability of the doctrine of inconsistent positions, which is the focus of this appeal.

3

that, when he started Smiley Sawmill in 1997, he did not have employees—it was just him, his wife, and his kids. He said that he had gone "in and out of business" but had begun doing well in 2012, which was when he started hiring employees and doing wage reports. He testified that the job application given to everyone, regardless of position, stated that Smiley Sawmill does not withhold income for taxes, unemployment, or other deductions. He said that everyone at Smiley Sawmill was supposed to receive a 1099. He said that, even though Jackson had not received a 1099, he had been told, like everyone else, that Smiley Sawmill does not withhold from earnings. On workers' compensation insurance applications that Tim signed, he had indicated that trucking classifications did not apply, but he testified that he did not understand the terms. He said that a lady at the insurance company, who knew that he had a truck and a driver, had filled out the application and sent it to him for his signature. Tim stated that he had other insurance policies with this insurance company, including an umbrella policy. Tim also stated that, even after a workers' compensation audit, Smiley Sawmill continued to not list truck drivers as employees on quarterly wage reports. He admitted that he had reported to the State of Arkansas that truck drivers at his sawmill had not been correctly identified as employees.

The Commission affirmed and adopted the ALJ's opinion that the doctrine of inconsistent positions was inapplicable to these facts and that Jackson was an employee entitled to workers' compensation benefits. Specifically, the Commission found that Smiley Sawmill had made multiple errors and mistakes in its paperwork but that

> [t]he Respondent did not have an intent or scheme to manipulate the system. The Respondent was just like thousands of other small businesses in our state attempting to satisfy a variety of complex rules as best as it could and to operate a small business.

4

The Commission thus concluded that the doctrine of inconsistent positions did not apply.

## II. *Exclusive Remedy*

The Commission has original exclusive jurisdiction to decide whether a tort action is barred by the exclusive-remedy doctrine. *VanWagoner v. Beverly Enters.*, 334 Ark. 12, 970 S.W.2d 810 (1998). An employer who has secured for its employees the benefits of workers' compensation is immune from liability for damages in a tort action brought by an injured employee. *Truman Arnold Co. v. Miller Cnty. Cir. Ct.*, 2017 Ark. 94, 513 S.W.3d 838. This rule, known as the exclusivity doctrine, arises from Ark. Code Ann. § 11-9-105, which provides that "[t]he rights and remedies granted to an employee subject to the provisions of this chapter, on account of injury or death, shall be exclusive of all other rights and remedies of the employee, his legal representative, dependents, [or] next of kin." Ark. Code Ann. § 11-9-105(a)(1) (Supp. 2021). Essentially, if an employee is granted a right or remedy under the Workers' Compensation Act, the employee is limited to the relief provided under the Act. *Esterline Techs. Corp. v. Brownlee*, 2021 Ark. 33, 617 S.W.3d 256. Because the exclusive-benefits provision of our compensation law favors both the employer and the employee, we take a narrow view of any attempt to seek damages beyond that favored, exclusive remedy. *Wilhelm v. Parsons*, 2016 Ark. App. 56, 481 S.W.3d 767.

Here, Jackson does not dispute that Smiley Sawmill had a workers' compensation policy in effect at the time of his death; rather, Jackson contends that he was not covered by it as an employee because his employer had treated him, as well as other truck drivers, as an independent contractor for tax purposes and for obtaining workers' compensation insurance. The record reflects that, even though Jackson was not listed as an employee, the

5

employer's workers' compensation carrier offered his widow benefits but that she declined them. Just as in *Jackson I*, Jackson does not challenge the Commission's factual conclusion, based on the multifactor test, that he was an employee, not an independent contractor. Arguments not made on appeal are abandoned. *BHC Pinnacle Pointe Hosp., LLC v. Nelson*, 2020 Ark. 70, 594 S.W.3d 62.

### III. *Standard of Review*

On appellate review, we consider the evidence in the light most favorable to the Commission's decision and uphold that decision if it is supported by substantial evidence. *Honeysuckle v. Curtis H. Stout, Inc.*, 2010 Ark. 328, 368 S.W.3d 64. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* There may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we had sat as the trier of fact or heard the case de novo. *Id.* More significantly, and controlling in this case, it is exclusively within the province of the Commission to determine the credibility and the weight to be accorded to each witness's testimony. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Privett v. Excel Specialty Prods.*, 76 Ark. App. 527, 69 S.W.3d 445 (2002).

### IV. *Discussion*

#### A. Mandate Rule and Law of the Case

We first address Jackson's second argument. A mandate is the official notice of the appellate court's action, directed to the court below, advising that court of the action taken

6

by the appellate court and directing the lower court to have the appellate court's judgment duly recognized, obeyed, and executed. *Turner v. Nw. Ark. Neurosurgery Clinic*, 91 Ark. App. 290, 210 S.W.3d 126 (2005). An inferior court must give deference to an appellate court's mandate, implementing both the letter and spirit of the mandate, and has no power or authority to deviate from the mandate issued by an appellate court. *Id*. The "mandate rule" is a subset of the law-of-the-case doctrine, which provides that the decision of an appellate court establishes the law of the case for the trial court upon remand and for the appellate court itself upon subsequent review and is conclusive of every issue of law or fact previously decided by the appellate court. *Id*.

Jackson asserts that our mandate to the Commission was "to apply the doctrine of inconsistent positions if applicable." Jackson argues that prior to remand, the Commission found that Smiley Sawmill had taken and benefited from an inconsistent position, thus constituting the law of the case; however, the Commission, looking at the same evidence on remand, ignored its prior findings of Smiley Sawmill's inconsistent position. According to Jackson, our mandate "forecloses any further consideration of the inconsistent positions that have already been decided."

Jackson appears to be saying that the Commission's findings in the first appeal are binding on it such that on remand, the Commission had no choice but to apply the doctrine of inconsistent positions per this court's mandate. Jackson must be referring to this statement in the Commission's 2017 opinion: "It is also clear that the respondent did not report the claimant's work status properly to state and federal authorities. This clearly may raise other issues." We, as the appellate court, did not decide any matter to its conclusion in *Jackson I*—

7

we remanded for further findings. Moreover, the Commission did not expressly find that Smiley Sawmill held an inconsistent position but rather noted that the employer had incorrectly reported Jackson's work status. We hold that the Commission followed our mandate on remand to first determine whether the doctrine of inconsistent positions applied before analyzing the factors to determine Jackson's status as either employee or an independent contractor.

## B. Doctrine of Inconsistent Positions

The doctrine of inconsistent positions is a form of estoppel that prevents an individual from asserting claims that are inconsistent with the individual's previous positions. *Dupwe v. Wallace*, 355 Ark. 521, 140 S.W.3d 464 (2004). It differs slightly from judicial estoppel. A prima facie case of judicial estoppel consists of the following elements: (1) a party must assume a position that is clearly inconsistent with a position taken in an earlier case or in the same case; (2) a party must assume the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage; (3) a party must have successfully maintained the position in an earlier proceeding such that the court relied on the position taken; and (4) the integrity of the judicial process of at least one court must be impaired or injured by the inconsistent positions taken. *Adams v. Howard*, 2014 Ark. App. 328, 436 S.W.3d 473. The doctrine of inconsistent positions is much broader than judicial estoppel and applies to positions taken outside litigation. *Dupwe, supra.*

It is well settled that whether estoppel is applicable is an issue of fact to be decided by the trier of fact. *Dickson v. Delhi Seed Co.*, 26 Ark. App. 83, 760 S.W.2d 382 (1988). The doctrine of inconsistent positions should be imposed only to avoid a miscarriage of justice.

*Dupwe, supra.* Also, the doctrine applies only to intentional contradictions, not to simple error or inadvertence. *Id.*

Jackson argues that Smiley Sawmill has for years taken an inconsistent position that is solely and unfairly for its financial benefit. Jackson points out that the Commission's decision turned on its finding that there was no evidence that Smiley Sawmill intended to manipulate the matter, which Jackson argues essentially requires an offending party to admit its fraudulent conduct, which will never happen. Jackson argues that intent must be inferred through actions and that, to determine Smiley Sawmill's intent, one has only to look at its pattern and practice. From 2012 through the first half of 2016, Smiley Sawmill reported no fewer than seventeen times that truck drivers were not employees. After the lawsuit, Smiley Sawmill for the first time identified truck drivers as employees but then took no steps to pay taxes that it would have owed had truck drivers always been identified as employees. Jackson argues that, if this was just a mistake or inadvertent error, Smiley would have tried to rectify the issue.

The Commission made a factual finding that Smiley Sawmill did not have any intent to manipulate the system; thus, the doctrine of inconsistent positions did not apply. The Commission considered the level of sophistication and experience, or lack thereof, of Smiley Sawmill's owner and employee. The Commission also considered Smiley Sawmill's explanation for its inconsistent position, which was essentially that neither Tim nor LaValle knew what they were doing. For example, the Commission pointed to LaValle's methodology for filling out reports, which was simply copying one report from a previous, albeit incorrect, report. Also, the Commission noted that Smiley Sawmill's insurance agent

had filled out the workers' compensation application over the telephone. Tim testified that this agent knew his business and that he had multiple policies with the insurance company. The Commission also found that filing documents for state and federal agencies with very different rules and regulations is an overwhelming experience for a small business. Jackson points out that, after Tim realized the error, he did not go to the taxing authorities to correct the "mistake." Tim, however, testified that he had not remedied the situation by paying back taxes on the advice of his lawyers. Although we may not have reached the same conclusion as the Commission, we cannot second-guess what was a credibility determination. *Honeysuckle, supra.* Thus, we hold that the Commission's decision is supported by substantial evidence.

Affirmed.

HARRISON, C.J., and GRUBER, J., agree.

*Strong-Garner-Bauer, P.C.*, by: *Steve Garner*, *Chandler Gregg*, and *Nick Smart*; and *Spencer Fane, LLP*, by: *Jason C. Smith*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Sherry P. Bartley* and *David F. Koehler*; and *Matthews, Sanders & Sayes*, by: *Roy Gene Sanders*, for appellee Smiley Sawmill, LLC.