Cite as 2019 Ark. App. 560

# ARKANSAS COURT OF APPEALS

DIVISIONS II & III
**No.** CV-18-1036

|  |  |
|---|---|
| WILLIAM B. STANLEY, NIOLENE E. STANLEY, STEPHEN C. PARKER, KATHRYN A. PARKER, MATTHEW BRITT, AND MICHAEL C. WILLIS, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED<br>APPELLANTS<br><br>V.<br><br>OZARKS ELECTRIC COOPERATIVE CORPORATION AND OZARKSGO, LLC<br><br>APPELLEES | **Opinion Delivered:** December 4, 2019<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CV-17-916]<br><br>HONORABLE DOUG MARTIN, JUDGE<br><br>REVERSED AND REMANDED |

## BART F. VIRDEN, Judge

Appellants William B. Stanley, Niolene E. Stanley, Stephen C. Parker, Kathryn A. Parker, Matthew Britt, and Michael C. Willis appeal from the Washington County Circuit Court's order dismissing their complaint against appellees Ozarks Electric Cooperative Corporation and OzarksGo, LLC (Ozarks Electric). The circuit court found that the Arkansas Public Service Commission (PSC) has primary jurisdiction of the case. Because this is an inverse-condemnation proceeding and otherwise involves private-property rights, appellants' complaint was properly filed in the circuit court, which has jurisdiction over this matter. Accordingly, we reverse and remand for further proceedings.

## I. *Standard of Review*

When reviewing a circuit court's order granting a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Sanford v. Walther*, 2015 Ark. 285, 467 S.W.3d 139. Our standard of review is whether the circuit court abused its discretion. *Id.* As to issues of law presented, our review is de novo. *Id.*

## II. *Allegations in the Complaint*

The plaintiffs/appellants are property owners in Washington County. The Stanleys and the Parkers own property subject to general-utility easements. Ozarks Electric has installed and is operating a commercial fiber-optic communications network independent of the transmission or distribution of electricity. The Stanleys and the Parkers allege that Ozarks Electric entered land adjacent to the existing utility easements to install its fiber-optic communications network. They allege that during construction of the network, they suffered damages, e.g., loss of use and loss of privacy, to the land adjacent to the easements for which no compensation was offered. They also allege that they suffered damages to the land within the existing easements due to the increased interference with their use of the land.

Britt owns property through which Ozarks Electric has a right-of-way easement for the transmission or distribution of electricity. Britt executed this easement for Ozarks Electric's distribution line, but the recorded easement's use is limited on its face to an "electric line or system." He alleges that Ozarks Electric plans to install and operate a newly constructed 100 percent fiber-optic communications network independent of the existing

system for the transmission or distribution of electricity. Britt seeks damages for inverse condemnation or, alternatively, increased interference.

Willis owns property through which Ozarks Electric installed and maintains a transmission or distribution line for electricity. While there are no existing easements on record with respect to Willis's property, Ozarks Electric plans to install and operate a newly constructed 100 percent fiber-optic communications network on his property. Willis seeks damages for inverse condemnation or, alternatively, increased interference.

Appellants allege that Ozarks Electric plans to install and operate a commercial fiber-optic communications network that is independent of the existing wires and cables for the transmission or distribution of electricity. Ozarks Electric's plans for such a network is a separate business distinct from the generation, transmission, or distribution of electricity. Neither the written, recorded electric power-line easement to Ozarks (on Britt's property) nor the unrecorded electric power-line easement benefiting Ozarks (on Willis's property) authorizes the installation of fiber-optic cables for communication, internet, or television purposes. Appellants allege that the Broadband Over Power Utility Lines Enabling Act provides for an award of damages to property owners for increased interference when a utility company installs broadband over power lines without just compensation. Appellants allege that BPL (broadband over power lines) is technology that sends two signals down one line: one signal is electricity, and the other is a broadband internet signal. According to appellants, the new fiber-optic system is not broadband over power lines; rather, it is broadband over newly installed fiber-optic cables. They contend that none of Ozarks Electric's existing power lines are being used for the transmission of the internet signal.

### III. *Eminent Domain*

"Whenever any corporation authorized by law to appropriate private property for its use shall have entered upon and appropriated any real or personal property, the owner of the property shall have the right to bring an action against the corporation *in the circuit court* of the county in which the property is situated for damages for the appropriation[.]" Ark. Code Ann. § 18-15-102(a) (Repl. 2015) (emphasis added). A property owner is entitled to receive just compensation when private property is taken for a public use. Ark. Code Ann. § 18-15-103(b)(1). Arkansas Code Annotated section 18-15-504 deals with petitions for the assessment of damages. "If an electric utility . . . fails to obtain, by agreement with the owner of the property through which the line may be located, the right-of-way over the property, it may apply by petition to the circuit court of the county in which the property is situated to have the damages for the right-of-way assessed[.]" Ark. Code Ann. § 18-15-504(a). "An electric utility shall not be required to petition a court in order to provide broadband services *over its own lines* of wire, cables, poles, or other structures *that are in service at the time* that the electric utility provides broadband services over the lines of wire, cables, poles, or other structures." Ark. Code Ann. § 18-15-504(e)(1) (emphasis added). "An owner of property upon which an electric utility's lines of wire, cables, poles, or other structures are located may *petition the circuit court* of the county in which the property is situated for any compensation to which it might be entitled under this subchapter." Ark. Code Ann. § 18-15-504(e)(2) (emphasis added). Section 18-15-507 provides,

> If an owner of property petitions a court under section 18-15-504(e), the amount of damages, if any, payable to the owner for the use of *preexisting lines* of wire, cables, poles, or other structures by an electric utility to provide broadband services shall be limited to an amount sufficient to compensate the property owner

4

for the increased interference, if any, with the owner's use of the property caused by any new or additional physical attachments to the preexisting facility for the purpose of providing broadband services.

Ark. Code Ann. § 18-15-507(a)(2) (emphasis added).

IV. *The Broadband Over Power Lines Enabling Act*

An electric utility, along with affiliates and unaffiliated entities, may own or operate a broadband system on the electric utility's electric-delivery system. Ark. Code Ann. § 23-18-804(a)(1), (2) & (3) (Repl. 2015). Arkansas Code Annotated section 23-18-805(a) provides that "[e]xcept as provided in this subchapter, neither the state nor any agency, instrumentality, or political subdivision of the state has jurisdiction over (1) an electric utility's ownership or operation of a broadband system; or (2) the provision of broadband services by the electric utility, a broadband affiliate, or a broadband operator." "Nothing in this subchapter shall interfere with the Arkansas Public Service Commission's authority to regulate public utilities pursuant to section 23-2-301 et seq." Ark. Code Ann. § 23-18-805(b).

Section 23-3-119 provides that any person unlawfully treated by a public utility may complain to the PSC in writing, and the PSC has the authority to investigate and hold public hearings. The PSC shall also have the authority "to mandate monetary refunds and billing credits, or to order appropriate prospective relief as authorized or required by law, rule, regulation, or order." Ark. Code Ann. § 23-3-119(d). Moreover,

> The jurisdiction of the commission in such disputes is primary and shall be exhausted before a court of law or equity may assume jurisdiction. However, *the commission shall not have the authority to order payment of damages or to adjudicate disputes in which the right asserted is a private right found in the common law of contracts, torts, or property*.

*Id*. (emphasis added).

The statute specifically grants the PSC "the authority to adjudicate individual disputes between *consumers* and the *public utilities which serve them* when those disputes involve *public rights*." Ark. Code Ann. § 23-3-119(f)(1) (emphasis added). Furthermore,

> Public rights which the commission may adjudicate are those arising from the public utility statutes enacted by the General Assembly and the lawful rules, regulations, and orders entered by the commission in the execution of the statutes. The commission's jurisdiction to adjudicate public rights does not and cannot, however, extend to disputes in which the right asserted is a private right found in the common law of contracts, torts, or property.

Ark. Code Ann. § 23-3-119(f)(2).

V. *Discussion*

Here, the circuit court granted Ozarks Electric's motion to dismiss because it found that the PSC had primary jurisdiction over the matter. Subject-matter jurisdiction is the power of the court to hear and determine the subject matter in controversy between the parties. *Perroni v. Sachar*, 2017 Ark. 59, 513 S.W.3d 239. An Arkansas court lacks subject-matter jurisdiction if it cannot hear a matter "under any circumstances" and is "wholly incompetent to grant the relief sought." *Edwards v. Edwards*, 2009 Ark. 580, at 4, 357 S.W.3d 445, 448 (quoting *J.W. Reynolds Lumber Co. v. Smackover State Bank*, 310 Ark. 342, 352–53, 836 S.W.2d 853, 858 (1992)). Circuit courts have original jurisdiction of "all justiciable matters not otherwise assigned pursuant to" the constitution. Ark. Const. amend. 80, § 6(A). Generally, condemnation proceedings are within the exclusive jurisdiction of the circuit court. *Ark. Power & Light Co. v. Potlatch Forest, Inc.*, 288 Ark. 525, 707 S.W.2d 317 (1986).

The particular claims raised by these appellants do not involve public rights or the provision of broadband services. The complaint identifies appellants as landowners, not

consumers of the utility company. The gist of their complaint is a taking of private property without just compensation. Appellants do not dispute that Ozarks Electric has a right to use its own existing lines to transmit broadband services. Appellants' issue is with Ozarks Electric's entry onto their land to install completely new lines for broadband services without just compensation or an assessment of damages for the increased interference. Because the circuit court has exclusive, original jurisdiction to adjudicate a dispute involving private-property rights and damages for inverse condemnation and increased interference, we reverse and remand to the circuit court for further proceedings.

Reversed and remanded.

ABRAMSON, SWITZER, and MURPHY, JJ., agree.

HIXSON and BROWN, JJ., dissent.

**Kenneth S. Hixson, Judge, dissenting**.

## I. *Introduction*

To begin, we need to understand the statutory scheme of the Broadband Act of 2007 (the Act). Once we determine the scope of the Act and the statutory scheme therein, then we can review the appropriateness of the relief requested by the plaintiffs and the circuit court's granting of the motion to dismiss.

In 2007, the legislature understood the necessity to expand broadband internet services around the state of Arkansas. To partially satisfy this necessity, the Broadband Act of 2007 was enacted to allow electric utility companies to create, construct, and operate broadband internet services over their existing electrical distribution systems. It would seem to be a natural fit since the electric utility companies already had in place their own

7

electricity delivery systems throughout the state (i.e., easements, poles, cables, structures, etc.), and it would be efficient to utilize these same delivery systems for the creation and operation of broadband internet systems. One must keep in mind that the Act applies to existing electrical delivery systems and not to property that is not part of an electrical delivery system. Any property not within an existing electrical delivery system would be subject to the utility's rights of eminent domain, inverse condemnation, or other appropriate proceedings.

The Act was partially codified in Arkansas Code Annotated section 23-18-802(4), which defines "Broadband Services" as "the provision of regulated or non-regulated connectivity to a high–speed, high-capacity transmission medium that can carry signals from multiple independent network carriers *over electric power lines and related facilities, whether above or below ground.*" (Emphasis added.)[1] Arkansas Code Annotated section 23-18-803(a) provides that "[a]n electric utility . . . may own, construct, maintain, and operate a broadband internet system and provide broadband services *on an electric utility's electric delivery system consistent with the requirements of this subchapter.*" Arkansas Code Annotated section 23-18-803(c) provides that "[a]n electric utility . . . may elect to install and operate a broadband system *on part or all of its electric delivery system* in any part or all of its certified service territory." Hence, the import of Arkansas Code Annotated sections 23-18-801 et seq. is that an electric utility has the statutory authority to create, construct, install and operate a broadband internet system on part, or all, of its electric delivery system whether above or below ground.

---

[1]The italicized portions of the other statutes cited in this dissent also reflect added emphasis.

Now that we have established that an electric utility company has the statutory authority to construct and operate a broadband internet system on its own electric delivery system, the next questions are: How does an electric utility company go about constructing the broadband system? Where do the new broadband cables go? Does the utility have to obtain permission from the landowners or courts? Does the utility have to re-condemn its existing easements? Are the landowners entitled to additional compensation? Each of these questions is pertinent, and the answer to each of these questions is found in the all-encompassing Act.

Two other statutes are relevant to the permission/condemnation questions. Arkansas Code Annotated section 18-15-503(b)(2) provides:

> [A]n electric utility shall *not* be required to secure by consent, contract, or agreement *or to procure by condemnation* the right to provide broadband services *over its own … poles, or other structures that are in service* at the time that the electric utility provides broadband services over the … poles, or other structures.

(Emphasis added.) The import is clear: an electric utility company may use its own poles or other structures that are already in service to provide broadband internet services without permission of the landowner or without re-condemning its easement. Arkansas Code Annotated section 18-15-504(e)(1) goes one step further. Not only does the electric utility company not have to obtain permission from the landowner or re-condemn its existing easement, subsection 504(e)(1) provides that the electric utility company does not have to obtain circuit court approval: "An electric utility shall *not* be required to petition a court in order to provide broadband services *over its own … poles, or other structures* [.]" (Emphasis added.) So, an electric utility company does not have to obtain consent from the landowner, does not have to procure the rights by condemnation, nor does it have to obtain permission

9

of the court to provide broadband services over its own poles or other structures that are in service. One might argue that such a broad granting of power to the electric utility companies in the 2007 Act creates an unconstitutional taking of private property. However, the appellants herein did not challenge the constitutionality of the Act, so that issue is not before this court. Hence, since 2007, an electric company has the statutory right to provide broadband internet services over its poles and structures then in existence.

Now that we have established that an electric utility company has the statutory authority to construct a broadband internet system on its own delivery system and that the electric utility does not have to obtain permission from the landowners or courts to do so, the next question is what are the remedies afforded the landowners when the utility company does install a new cable for broadband services over its poles and structures? Again, the answer is in the all-encompassing Act. Arkansas Code Annotated section 18-15-504(e)(2) provides:

> An owner of property upon which an electric utility's lines of wire, cables, poles, or other structures are located may *petition the circuit court* of the county in which the property is situated *for any compensation to which it might be entitled under this subchapter.*

(Emphasis added.) Again, the import is clear. The Act does not abrogate a landowner's right to petition a circuit court for damages caused by the construction of a broadband internet system within an electric utility's distribution system. However, the Act does substantially limit the damages available to the landowner. Arkansas Code Annotated section 18-15-507(a)(2)(A) provides:

> If an owner of property petitions a court under § 18-15-504(e) the amount of damages, if any, payable to the owner *for the use of preexisting … poles, or other structures* by an electric utility to provide broadband services shall be *limited to* an amount sufficient to *compensate the property owner for the increased interference*, if any, with the

10

owner's use of the property *caused by any new or additional physical attachments to the preexisting facility* for the purpose of providing broadband services.

(Emphasis added.) The meaning is clear. If an electric utility company strings a new cable that carries a broadband internet signal over existing poles or structures, the only damages afforded the landowner under the Act is compensation for increased interference with the use of his land caused by the new attachment. Or, stated another way, if the landowner can prove that the newly installed internet cable causes new additional interference with his use of his land, then the landowner may recover damages against the utility in circuit court for compensation caused by this new internet cable, if any. By way of example, assume an electric utility company has an easement through a landowner's property for its electrical distribution system and the utility company has previously installed power poles and strung four electric cables. The electric utility company has already compensated the landowner for this easement. If the electric utility company now comes through and strings a fifth cable that carries broadband internet signal across those power poles, the landowner may recover damages in circuit court for statutory compensation for that fifth cable, if that fifth cable causes additional interference with the landowner's use of his property. That is the statutory scheme of the Broadband Act of 2007.

This Act has been in place for twelve years. What is different now? The only difference now is that instead of stringing cables made of copper to transmit broadband signals across existing poles and structures (which was the industry standard in 2007), the electric utility companies now want to string *fiber-optic cables* for broadband internet across their existing poles and structures. So, the threshold question in reviewing the motion to dismiss in this case is whether the installation of fiber-optic cables for broadband internet

services falls within the purview of the Broadband Act of 2007. The same statutory scheme should apply whether it is a copper cable or a fiber-optic cable. Both are carrying broadband internet signals. If fiber-optic broadband internet services do fall within the purview of the Act, then the plaintiffs' damages are limited to an amount sufficient to compensate the property owner for the increased interference, if any, with the owner's use of the property caused by any new or additional physical attachments. If fiber-optic broadband internet services do not fall within the purview of the Act, then, perhaps, the plaintiffs may file a claim for inverse condemnation against the electric utility companies, and their damages would be an amount to justly compensate the landowner for a taking of property by the utility companies.

Now that we have identified the threshold question (the applicability of the 2007 Act to a fiber-optic broadband internet system), the bottom line to this litigation and the issue on appeal is which *forum* is best designed to answer the question—the Public Service Commission (PSC) or the various circuit courts around the state. Which forum has the expertise and experience to determine if a fiber-optic broadband system constitutes broadband services as defined in Arkansas Code Annotated section 23–18–802(4)? The circuit court determined that the PSC has primary jurisdiction to answer this question, and I agree. Once the PSC determines if fiber-optic cable is, or is not, within the purview of the Act, then either party may appeal to this court for appellate review and a determination of whether substantial evidence supports the PSC's determination. *See* Ark. Code Ann. § 23-2-423. Only when that issue is ultimately decided (i.e., when the administrative remedies are exhausted), will the circuit court be in a position to determine if the plaintiffs'

12

claims are limited to statutory damages pursuant to section 18-15-507(a)(2)(A), or if the plaintiffs may seek damages under claims for inverse condemnation.

## II. *The Circuit Court*

The appellant landowners'[2] class action complaint against Ozarks Electric, filed in circuit court on behalf of themselves and others similarly situated, alleged that Ozarks Electric had wrongfully entered their property and installed fiber-optic communications systems for high-speed internet. The complaint acknowledged that the lands at issue were subject to either Ozarks Electric easements or general utility easements. In the appellants' third and final amended complaint, they sought damages for inverse condemnation, *increased interference with the use of their land*, and appellees' entry upon property adjacent to any existing easements or upon lands not subject to easements.

Ozarks Electric filed a motion to dismiss the appellants' action for lack of subject-matter jurisdiction. In its motion, Ozarks Electric alleged that its installation of broadband internet services was constructed over *existing electric delivery systems* on property to which it already had its own easements or on property subject to general utility easements. Ozarks Electric asserted that its installation of the fiber-optic cable lines is expressly permitted by the Broadband Act. Ozarks Electric argued further that, because the Broadband Act is a public utility statute involving public rights, claims such as this that arise out of the Act fall within the primary jurisdiction of the PSC. Ozarks Electric asserted that because the

_____

[2]While the plaintiffs herein are sometimes collectively referred to as "landowners," the landowners are not of equal footing. Plaintiff Britt owns land that is encumbered by easements in favor of Ozarks Electric for its electrical distribution system. Plaintiffs Stanley and Parker own land that is encumbered by public general utility easements. The land owned by Plaintiff Willis apparently does not have a recorded easement.

appellants had not sought a determination of their action by the PSC, they had failed to exhaust their administrative remedies, and that the appellants' action in circuit court should be dismissed.

The parties disagree as to whether Ozarks Electric's installation of fiber-optic cable lines was authorized under the Broadband Act. Ozarks Electric argues that its actions were proper under the Act and that the appellants' damages, if any, are limited to those contemplated by Ark. Code Ann. § 18-15-507(a)(2)(A). The appellants, on the other hand, contend that the Broadband Act does not apply to Ozarks Electric's actions, and that, among other things, appellants are entitled to maintain an inverse-condemnation action for damages to their real property caused by Ozarks Electric's unauthorized entry onto their property and installation of the lines.

The circuit court did not reach the merits of the lawsuit, but instead decided that the PSC has primary jurisdiction over the matters asserted in the appellants' complaint. The circuit court therefore dismissed the complaint for lack of subject-matter jurisdiction. In reviewing a circuit court's decision on a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff, and we will not reverse the granting of a motion to dismiss absent an abuse of discretion. *Hamby v. Health Mgmt. Assoc., Inc.*, 2015 Ark. App. 298, 462 S.W.3d 346. In my view, the circuit court did not abuse its discretion in dismissing the complaint.

### III. *Analysis on Appeal*

The supreme court has recognized that the legislature intended to place primary jurisdiction over consumer disputes in the PSC. *Austin v. Centerpoint Energy Arkla*, 365 Ark.

138, 226 S.W.3d 814 (2006). In addition, the PSC is a creature of the legislature and must act within the power conferred on it by legislative act. *Id.* The PSC's jurisdiction and adjudicative authority are established in Ark. Code Ann. § 23-3-119 (Repl. 2015), which provides in relevant part as follows:

> (a)(1) Any . . . consumer of a public utility *[or] any person unlawfully treated by a public utility* . . . may complain to the commission in writing. The complaint shall set forth any act or thing done or omitted to be done by any public utility or customer in violation, or claimed violation, of any order, law, or regulation which the commission has jurisdiction to administer.
>
> . . . .
>
> (d) The commission shall then have the authority, upon timely notice, *to conduct investigations and public hearings*, to mandate monetary refunds and billing credits, *or to order appropriate prospective relief as authorized or required by law, rule, regulation, or order. The jurisdiction of the commission in such disputes is primary and shall be exhausted before a court of law or equity may assume jurisdiction. However, the commission shall not have the authority to order payment of damages or to adjudicate disputes in which the right asserted is a private right found in the common law of contracts, torts, or property.*
>
> . . . .
>
> (f)(1) It is the specific intent of the General Assembly . . . to vest in the Arkansas Public Service Commission *the authority to adjudicate individual disputes between consumers and public utilities which serve them when those disputes involve public rights* which the commission is charged by law to administer.
>
> (2) *Public rights which the commission may adjudicate are those arising from the public utility statutes enacted by the General Assembly and the lawful rules, regulations, and orders entered by the commission in the execution of the statutes.* The commission's jurisdiction to adjudicate public rights does not and cannot, however, extend to disputes in which the right asserted is a private right found in the common law of contracts, torts, or property.

(Emphasis added.) Further, the legislature has chosen not to limit the PSC's jurisdiction to the powers expressly set out in these statutes. *See, e.g., Brandon v. Ark. Pub. Serv. Comm'n*, 67 Ark. App. 140, 992 S.W.2d 834 (1999) (holding that the PSC had the authority to hear

15

a class action involving allegations of violating the "least-cost gas purchasing statute," although such a power is not specifically enumerated in section 23-3-119, because such a claim would necessarily affect numerous ratepayers, and it was "logical" to conclude that the legislature intended for the Commission to have the authority to hear such actions).[3]

The appellants herein argue that the PSC does not have jurisdiction under Ark. Code Ann. § 23-3-119 because their complaint asserts a private property right, i.e., damages for inverse condemnation. Inverse condemnation is a cause of action to recover the value of the property which has been taken in fact although not through eminent domain procedures. *Robinson v. City of Ashdown*, 301 Ark. 226, 783 S.W.2d 53 (1990). Generally, condemnation proceedings are within the exclusive jurisdiction of the circuit court. *See Ark. Power & Light Co. v. Potlatch Forest, Inc.*, 288 Ark. 525, 707 S.W.2d 317 (1986). Similarly, the circuit court has subject-matter jurisdiction of inverse-condemnation claims. *See Union Pac. R.R. Co. v. State ex rel. Faulkner Cty.*, 316 Ark. 609, 873 S.W.2d 805 (1994). Appellants further assert that the inverse-condemnation statute itself, Ark. Code Ann. section 18-15-102, provides that the aggrieved landowner shall have the right to bring the action against the corporation in circuit court.

Ozarks Electric, conversely, argues that although the circuit court generally has jurisdiction over typical inverse-condemnation proceedings, this is not a typical inverse-condemnation proceeding because in order to determine whether there has been a taking,

---

[3]In *Brandon*, *supra*, the supreme court expressly held that the PSC has authority to hear a class action and that the PSC has broad discretion in determining whether an action qualifies for class certification. Therefore, the fact that the litigation herein was brought as a class action is no impediment to the PSC's jurisdiction to hear the case and make whatever findings are necessary as relates to the class-certification issues.

there must first be an interpretation of the Broadband Act of 2007. Ozarks Electric asserts that the PSC has primary jurisdiction over the matter because the main controversy arises from a public-utility statute and involves public rights. I agree with Ozarks Electric that the PSC has primary jurisdiction to interpret the Broadband Act vis-à-vis whether fiber-optic cable is within the purview of the Broadband Act. I disagree, however, with Ozarks Electric that the landowners' claims for damages are within the jurisdiction of the PSC. The Broadband Act itself expressly provides that the landowner may apply to the circuit court for damages under the Act.

Ozarks Electric's argument that the PSC has primary jurisdiction to interpret the Broadband Act is supported by caselaw. In *Capps v. Carroll Electric*, 2011 Ark. 48, 378 S.W.3d 148, the plaintiffs brought a class action against an electric-cooperative corporation alleging various causes of action, but ultimately seeking a refund of patronage capital to class members. The trial court dismissed the suit finding that jurisdiction of the claims was properly with the PSC, and the supreme court affirmed. The supreme court wrote:

> Capps alleges that the heart of the claim is a dispute over private-property rights. However, it is clear from the complaint that Capps alleged that Carroll Electric violated a duty to pay capital credits "on a reasonable and systematic basis." Further, the main relief sought in the complaint was a refund of those capital credits.

> As previously noted, the PSC has the authority to adjudicate individual disputes between consumers and the public utilities that serve them when those disputes involve public rights with which the commission is charged by law to administer. *See* Ark. Code Ann. § 23-3-119(f)(1). Such "public rights" are rights arising from the public-utility statutes enacted by the General Assembly and the lawful rules, regulations, and orders entered by the commission in the execution of the statutes. Ark. Code Ann. § 23-3-119(f)(2).

> The statutes that create and regulate public utilities, specifically the electric-cooperative corporations, address the matter of capital credits. *See* Ark. Code Ann. § 23-18-327 (Supp. 2009).

17

*Capps*, 2011 Ark. 48, at 5−6, 378 S.W.3d at 151. The supreme court held that the PSC had primary jurisdiction of Capps's claim that Carroll Electric had violated the requirements of a public-utility statute. The supreme court was not swayed by Capps's attempt to couch the claim as some sort of private right found in the common law of contracts, torts, or property, which would fall outside the jurisdiction of the PSC.

In *Hempstead County Hunting Club, Inc. v. Southwest Electric Power Co.*, 2011 Ark. 234, 385 S.W.3d 123, the plaintiff brought suit alleging that the public utility was violating Arkansas statutes by failing to obtain certain certificates for construction of an electrical plant. The supreme court held that the PSC had primary jurisdiction because the controversy arose under the Utility Facility and Economic Protection Act. The supreme court stated that the PSC has quasi-judicial authority to adjudicate complaints arising from the public-utility statutes. The supreme court thus held that the plaintiff was required to first bring its complaint before the PSC, and to exhaust all remedies before the PSC, prior to seeking judicial relief.

As in the above cases, the heart of the controversy in the instant matter arises from a public-utility statute, i.e., the Broadband Act of 2007. When the Broadband Act was enacted in 2007, electric companies such as Ozarks Electric could provide broadband service literally over their electric lines. Thus, the language of the Broadband Act specifically covers that practice. However, at issue in this case is whether the Broadband Act also applies to fiber optics, which were not created until after the 2007 legislation. Arkansas Code Annotated section 18-15-503(b)(2) states that an electric utility is not required to procure by condemnation "the right to provide broadband services over its own lines of wire, cable,

18

poles, or other structures that are in service at the time that the electric utility provides broadband services over the lines of wire, cables, poles, or other structures." This phrase has not been interpreted as it relates to fiber-optic lines, and its interpretation will resolve the threshold issue in this litigation. The interpretation of this public-utility statute will involve public rights. That interpretation should be for the PSC and not the circuit court.

Generally, the doctrine of exhaustion of administrative remedies provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed statutory administrative remedy has been exhausted. *Old Republic Surety Co. v. McGhee*, 360 Ark. 562, 203 S.W.3d 94 (2005). A basic rule of administrative procedure requires that an agency be given the opportunity to address a question before a complainant resorts to the courts. *Id.* Only when a claimant has exhausted its administrative remedies does the state court system come into play. *Hempstead Cty. Hunting Club*, *supra*. This conclusion comports with the supreme court's consistent holdings that administrative agencies are better equipped than courts—by specialization, insight through experience, and more flexible procedures— to determine and analyze underlying legal issues affecting their agencies. *Id.* The failure to exhaust administrative remedies is grounds for dismissal. *Douglas v. City of Cabot*, 347 Ark. 1, 59 S.W.3d 430 (2001).

In *Austin v. Centerpoint Energy Arkla*, 365 Ark. 138, 226 S.W.3d 814, the supreme court discussed the doctrine of primary jurisdiction and its applicability to the PSC. The doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and administrative agencies charged with regulatory duties. *Austin*, *supra*. The doctrine applies when a claim is originally cognizable in the courts and comes into play

19

when enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case, the judicial process is suspended pending referral of such issues to the administrative body for its views. *Id.* The supreme court in *Austin* implemented the reasoning of the United States Supreme Court in *United States v. Western Pacific Railroad Company*, 352 U.S. 59 (1956), wherein the Supreme Court wrote:

> No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. These reasons and purposes have often been given expression by this Court. In the earlier cases emphasis was laid on the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions. More recently the expert and specialized knowledge of the agencies involved has been particularly stressed. The two factors are part of the same principle, now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

*Western Pac. R.R.*, 352 U.S. at 64−65. The *Austin* court also quoted from *McGehee v. Mid South Gas Co.*, 235 Ark. 50, 57, 357 S.W.2d 282, 287 (1962):

> Orderly procedure and administrative efficiency demand that the regulatory body be vested with authority to make preliminary determination of legal questions which are incidental and necessary to the final legislative act. Otherwise endless confusion would result because different phases of the same case might be pending before the Commission and the courts at one time.

The considerations expressed by our supreme court in *Austin* illustrate why the primary issue in the litigation herein should come under the jurisdiction and specialization of the PSC. In the interest of uniformity, efficiency, and avoidance of confusion, the matter of whether the Broadband Act of 2007 applies to fiber-optic lines should be decided by the PSC rather than the circuit court herein and various other circuit courts throughout the state that may come to conflicting conclusions.

As set forth above, there are a myriad of questions that must be analyzed and answered by the PSC to promote uniformity, efficiency, and avoidance of confusion. Here is a sampling:

1. Whether a fiber-optic cable broadband internet system falls within the purview of the Broadband Act of 2007, which would also include whether the limitation of damages in section 18-15-507(a)(2)(A) is applicable.

2. Assuming a plaintiff owns land that is currently subject to an electric utility easement in favor of Ozarks Electric (or any electric company for that matter), and upon which overhead electric cables have been previously strung, whether the landowner is entitled to additional damages for new fiber-optic cables that are strung above ground within the easement.

3. Assuming a plaintiff owns land that is currently subject to an electric utility easement in favor of Ozarks Electric (or any electric company for that matter), and upon which overhead electric cables have been previously strung, whether the landowner is entitled to additional damages for new fiber-optic cables that are buried below ground within the easement.

21

4. Assuming a plaintiff owns land that is currently subject to a general utility easement and upon which overhead electric cables have been previously strung, whether the landowner is entitled to additional damages for new fiber-optic cables that are strung above ground within the easement.

5. Assuming a plaintiff owns land that is currently subject to a general utility easement and upon which overhead electric cables have been previously strung, whether the landowner is entitled to additional damages for new fiber-optic cables that are buried below ground within the easement.

6. Assuming a plaintiff owns land that is currently subject to an electric utility easement in favor of Ozarks Electric (or any electric company for that matter), and upon which overhead electric cables have been previously strung, whether the landowner is entitled to damages caused to the land by the utility during the installation of new fiber-optic cables that are buried below ground within the easement.

These are precisely the types of questions that were contemplated by the United States Supreme Court in *Western Pacific*, *supra*, when it explained why the appropriate agency has primary jurisdiction: "Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure." 352 U.S. at 64. And, as stated in *Austin*, *supra*, by the Arkansas Supreme Court: "This doctrine

22

[of primary jurisdiction] applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case, the judicial process is suspended pending referral of such issues to the administrative body for its views." 365 Ark. at 152, 226 S.W.3d at 823−24.

The resolution of these, and other pertinent questions, will require investigations, hearings, and participation from internet industry experts, electric utility companies, affected landowners and, perhaps, environmental engineering experts. The PSC has the ability and expertise to conduct these hearings. Again, this is a perfect example of the applicability of the supreme court's holding in *Hempstead County Hunting Club*, *supra*, where it stated: "This conclusion comports with the supreme court's consistent holdings that administrative agencies are better equipped than courts—by specialization, insight through experience, and more flexible procedures—to determine and analyze underlying legal issues affecting their agencies." 2011 Ark. 234, at 10, 385 S.W.3d at 129. The failure to exhaust administrative remedies is grounds for dismissal. *Douglas*, *supra*.

For the reasons expressed in this dissent, I am convinced that the circuit court correctly dismissed the case because the PSC has primary jurisdiction of the applicability of the Broadband Act of 2007 as it relates to the issues herein. Therefore, I depart from the majority and would affirm the dismissal of the action. This would not leave appellants without remedies; appellants would simply have to exhaust their remedies before seeking judicial relief in the circuit court. *See Hempstead Cty. Hunting Club*, *supra*.

BROWN, J., joins in this dissent.

*The Evans Law Firm, P.A.*, by: *Marshall Dale Evans*; and *Hirsch Law Firm, P.A.*, by: *E. Kent Hirsch*, for appellants.

*Friday, Eldredge & Clark LLP*, by: *Marshall S. Ney* and *Katherine C. Campbell*; and *Eldridge Law Firm*, by: *John R. Eldridge III*, for appellees.