Cite as 2025 Ark. App. 469

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CV-23-635

| | |
|---|---|
| OZARKS ELECTRIC COOPERATIVE CORPORATION AND OZARKSGO, LLC<br><br>APPELLANTS<br><br>V.<br><br>WILLIAM B. STANLEY; NIOLENE E. STANLEY; STEPHEN C. PARKER; KATHRYN A. PARKER; MATTHEW BRITT; AND MICHAEL C. WILLIS, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED<br><br>APPELLEES | Opinion Delivered October 8, 2025<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72CV-17-916]<br><br>HONORABLE DOUG MARTIN, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

This case returns to us after the Washington County Circuit Court entered an order denying a motion to compel arbitration and to stay the proceedings filed by appellants Ozarks Electric Cooperative Corporation and OzarksGo, LLC (at times, referred to collectively as "Ozarks"), against the Stanleys; the Parkers; Britt; and Willis, on behalf of themselves and all others similarly situated ("appellees" or "the Property Owners"). Ozarks argues that the trial court erred (1) by failing to recognize that all threshold issues of arbitrability should be decided by an arbitrator; (2) by relying on the law-of-the-case doctrine;

and (3) by deciding that appellees' claims were not covered by the arbitration agreements.[1] We affirm.

## I. *Procedural History*

Much of the factual background is set forth in our original opinion. *Stanley v. Ozarks Elec. Coop. Corp.*, 2019 Ark. App. 560, 591 S.W.3d 322. Generally, appellees are property owners who, in May 2017, brought an action against Ozarks for taking their property without just compensation and for increased interference with their land. Appellees own land subject to general utility easements and electric easements, both recorded and unrecorded. Appellees alleged that Ozarks planned to install and operate a commercial fiber-optic communications network independent of the existing wires and cables for the transmission or distribution of electricity. They alleged that Ozarks' plans for such a network is a separate business distinct from the generation, transmission, or distribution of electricity.

Ozarks moved to dismiss, alleging that the Arkansas Public Service Commission (PSC) had jurisdiction over appellees' claims. The trial court granted Ozarks' motion to dismiss for lack of jurisdiction. On appeal, in reversing and remanding for further proceedings, we held that the circuit court has exclusive jurisdiction over claims that involve private-property rights and inverse-condemnation proceedings, not the PSC. *Stanley, supra*. Ozarks filed a petition for rehearing, which we denied. Ozarks then filed a petition for review by the Arkansas Supreme Court. That petition was also denied.

---

[1]Ozarks also argued several points that it *anticipated* that appellees would raise as alternative grounds on which to affirm.

2

After the mandate issued in February 2020, Ozarks answered appellees' third amended complaint, raising arbitration as an affirmative defense and counterclaimed for declaratory judgment that appellees are bound by arbitration agreements. Ozarks then filed a motion to compel arbitration and to stay proceedings on April 16, 2020. The arbitration agreement in Ozarks Electric's bylaws enacted in 2011[2] provides the following:

> Any person, firm, association, corporation or body politic who becomes a member of Ozarks Electric Cooperative Corporation (hereinafter called the Cooperative) agrees: . . . (c) that *all member disputes with the cooperative*, to the extent not subject to the jurisdiction of the applicable regulatory commission of the State where the dispute arose or the member is located, shall be resolved by binding arbitration in accordance with the rules of and before the American Arbitration Association.

(Emphasis added.)

In OzarksGo's subscriber agreement, paragraph 22 provides the following with regard to dispute resolution by binding arbitration:

> OzarksGo and Subscriber agree to resolve *all disputes and claims* between OzarksGo (including OzarksGo's Parties as defined herein) and Subscriber *related to or associated with the Service* through binding arbitration by the American Arbitration Association ("AAA"). This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to all claims or disputes *arising out of or relating to any aspect of the relationship* between OzarksGo and Subscriber, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory.

(Emphasis added.)

---

[2]The bylaws, as amended in 2018, provide that "all member disputes with the cooperative, to the extent not subject to the jurisdiction of the applicable regulatory commission of the State where the dispute arose, or the member is located, shall, *with the exception of* collection cases, and *eminent domain* be resolved by binding arbitration . . . ." (Emphasis added.) Appellees amended their complaint twice in 2018.

In denying the motion to compel arbitration, the trial court found that "[a]s a result" of our holding in *Stanley*, *supra*, the arbitration agreement did not apply to appellees' causes of action and that "[b]ased on the spirit and purpose behind the Court of Appeals opinion, this controversy is not covered by the arbitration agreement relied on by [Ozarks], and it is controlled by the law of the case." Ozarks appealed.

## II.  *Standard of Review*

An order denying a motion to compel arbitration is an immediately appealable order. Ark. R. App. P.–Civ. 2(a)(12); Ark. Code Ann. § 16-108-228(a)(1) (Repl. 2016). We review a trial court's order denying a motion to compel arbitration de novo on the record, with the entire case open for review. *Boone Operations, LLC v. Adams*, 2025 Ark. App. 34, 705 S.W.3d 503. We do not reverse absent a showing that the trial court erred. *Id.* On appeal, we are limited to deciding two issues: (1) whether there is a valid arbitration agreement between the parties and (2) whether the dispute falls within the scope of that agreement. *HPD, LLC v. TETRA Techs., Inc.*, 2012 Ark. 408, 424 S.W.3d 304. Whether the law-of-the-case doctrine was properly invoked and to what extent it applies to a case are questions of law that the court of appeals reviews de novo. *Faughn v. Kennedy*, 2023 Ark. App. 252, 668 S.W.3d 512.

## III. *Discussion*

We begin our discussion by addressing the law-of-the-case doctrine because it is dispositive. The venerable doctrine of law of the case prohibits a court from reconsidering issues of law and fact that have already been decided on appeal. *Cadillac Cowboy, Inc. v. Jackson*, 347 Ark. 963, 69 S.W.3d 383 (2002). The doctrine serves to effectuate efficiency

4

and finality in the judicial process. *Id*. The doctrine provides that a decision of an appellate court establishes the law of the case for the trial on remand and for the appellate court itself on subsequent review. *Id*. On the second appeal, the decision of the first appeal becomes the law of the case and is conclusive of every question of law or fact decided in the former appeal and also of those that might have been, but were not, presented. *Id*. The law-of-the-case doctrine is conclusive only where the facts on the second appeal are substantially the same as those involved in the prior appeal and does not apply if there was a material change in the facts. *Turner v. Nw. Ark. Neurosurgery Clinic, P.A.*, 91 Ark. App. 290, 210 S.W.3d 126 (2005).

Ozarks argues that the trial court erred in relying on law of the case in denying its motion to compel arbitration. Ozarks asserts that we did not have the opportunity to rule on the issue of arbitration because the only issue presented was that of jurisdiction. Ozarks contends that our ruling on jurisdiction did not explicitly or implicitly decide the arbitration issue. Moreover, Ozarks states that—contrary to appellees' assertion—it, as the prevailing party below, was not obligated to raise any alternative grounds on appeal. Further, Ozarks contends that it was likewise not prevented from raising additional issues on remand that had not been decided.

We agree that Ozarks was neither obligated to raise arbitration as an alternative argument in the first appeal nor prohibited from raising arbitration on remand. The trial court had already determined that the PSC had exclusive jurisdiction over the case and thus, correctly, had not considered the merits-based issue of arbitration, and we would not have

5

addressed that matter when it had not been ruled on below. *See Greennecks Lawn Servs., LLC v. Lewis*, 2024 Ark. App. 404, 698 S.W.3d 367.

We, however, disagree with Ozarks that law of the case is not applicable here. In *Stanley*, we held that the trial court erred in ruling that the PSC had jurisdiction over appellees' claims. In explaining why the circuit court had jurisdiction and not the PSC, we said that the Property Owners' claims did not involve public rights or the provision of broadband services; that their complaint identified them as landowners, not consumers of the utility company; and that the gist of their complaint was a taking of private property without just compensation. We clarified that the Property Owners did not dispute that Ozarks had a right to use its own existing lines to transmit broadband services but that they objected to Ozarks' entry onto their land to install completely new lines for broadband services without just compensation or an assessment of damages for the increased interference. Ozarks did all that it could do procedurally to overturn our holding in *Stanley* but was unsuccessful, so those issues of law and fact are settled, and our mandate has issued.

A mandate is the official notice of the appellate court's action, directed to the court below, informing that court of the action taken by the appellate court and directing the lower court to have the appellate court's judgment duly recognized, obeyed, and executed. *Jackson v. Smiley Sawmill, LLC*, 2021 Ark. App. 433, 638 S.W.3d 11. An inferior court must give deference to an appellate court's mandate, implementing both the letter and spirit of the mandate, and has no power or authority to deviate from the mandate issued. *Id.*

6

While the trial court referenced the threshold questions that are typically involved when deciding a motion to compel arbitration, it ruled that they did not apply because the Property Owners' controversy is not subject to arbitration. In *Stanley*, we characterized the parties' dispute as a lawsuit by landowners against a utility company for the taking of and interference with private property. Appellees may—or may not—have been members of the cooperative or subscribers to OzarksGo; however, neither their status as members or subscribers nor Ozarks' provision of services to them had anything to do with the causes of action in the complaint. We said that this was a matter involving private-property rights and damages for inverse condemnation and increased interference. Therefore, Ozarks Electric's bylaws and OzarksGo's subscriber agreement containing arbitration provisions had no bearing on the causes of action alleged; rather, the causes of action essentially involved allegations that Ozarks had exceeded the scope of authorization within their various easements. We are bound by the issues of law and fact established in *Stanley*, as much as the parties. *Cadillac Cowboy*, *supra*. Accordingly, we affirm the trial court's decision.

Affirmed.

KLAPPENBACH, C.J., and WOOD, J., agree.

*Friday, Eldredge & Clark, LLP*, by: *Martin A. Kasten*, *Marshall S. Ney*, and *Katherine C. Campbell*, for appellants.

*Hirsch Law Firm, P.A.*, by: *E. Kent Hirsch*; *The Evans Law Firm, P.A.*, by: *Marshall Dale Evans*; and *Danielson Law Firm, PLLC*, by: *Paul Danielson* and *David Danielson*, for appellees.